IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


KENNETH PHILLIPS, #160634                    *
                  Plaintiff,

      v.                                      *    CIVIL ACTION NO. JFM-05-2809

WILLIAM O. FILBERT, JR.                            *
KATHLEEN S. GREEN
                Defendants.       *
                         ***

### MEMORANDUM

Plaintiff, an inmate housed at the Eastern Correctional Institution ("ECI"), filed this 42

U.S.C. §1983 civil rights action seeking injunctive relief and compensatory and punitive damages.

He alleges that while housed at the Maryland Correctional Institution in Jessup ("MCI-J"), he and

various religious and self-help groups were illegally forced by MCI-J Warden Filbert to allot a

percentage of their fund-raising money to pay the salary of an MCI-J chaplain and correctional

officers' health and/or retirement insurance. He further alleges that the fund-raising policy fomented

an inmate boycott and created hostility towards plaintiff, resulting in his assault.[1]  Paper No. 1.

Plaintiff also claims that ECI Warden Green failed to respond to his complaints regarding ECI

officials "interfering" with his medical treatment and his ability to practice his religion. Finally, he

---

[1]    Plaintiff raised a failure-to-protect claim related to these allegations in *Phillips v. Saar, et al.* , Civil Action No. JFM-04-3674 (D. Md.).  According to the pleadings in that case, plaintiff was the minister for the Lost-Found Nation of Islam at MCI-J, which was a small congregation and lacked resources to pay for holiday observances or dietary meals at MCI-J.   The MCI-J Chaplain worked with plaintiff's group and an outside vendor who was willing to donate funds for the purchase, through the institutional commissary, of items to be sold to inmates to raise funds for the congregation.  The sale was successful and a small percentage of monies earned was retained by MCI-J to defray commissary processing costs.  The expenses of the Lost-Found Nation of Islam's holiday observances were paid and a small surplus was placed in the organization's account.  There was, however, a dispute with the fund-raising process.  Plaintiff complained that the actions of the Chaplain and others had caused a rumor throughout MCI-J that plaintiff was stealing money and he was attacked by other inmates as a result of this rumor.

claims that she is illegally forcing him to contribute to the salaries of ECI chaplains and correctional

officers health and retirement insurance through commissary.[2]   Paper No. 1.

Defendants Filbert and Green have filed a motion to dismiss or in the alternative, motion for

summary judgment.  Paper No. 10.  Plaintiff has filed an opposition.[3]  Paper No. 14.   The motion

may be determined without oral argument.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons to

follow, defendants' dispositive filing, treated as a motion for summary judgment, shall be granted

in part and denied in part.[4]   Each claim shall be reviewed *seriatim*.

Use of Inmate Welfare Fund to Support Religious Services & Prison Staff

---

[2]    Plaintiff's claims raised against Administrative Law Judge Brian Zlotnick were summarily dismissed. Paper No. 4

[3]    On January 25, 2007, the court received for filing plaintiff's motion for temporary restraining order and preliminary injunction and motion for appointment of counsel.  Paper Nos. 15 & 16.  Plaintiff's emergency motion primarily focuses on his claims that he is being denied medical treatment under the Eighth Amendment and the Americans With Disabilities Act and denied his right to practice his religion under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").  A number of documents presented in the emergency motion were presented in plaintiff's opposition. *See* Paper No. 14.  As these allegations are wrapped up in the particularized claims raised in his opposition, which has been construed in part as an amended complaint, the motion for temporary restraining order and preliminary injunction shall be denied without prejudice.  Plaintiff's civil rights action will provide him adequate redress for those claims.  The requested emergency order goes to an equitable remedy.  Such a remedy will not be given when plaintiff has a forum for his Complaint. *See generally* 11 C. Wright & A. Miller, § 2944.  Defendants shall be required to answer the amended allegations raised in the opposition and emergency motion.

As to plaintiff's motion for appointment of counsel, the court shall deny the same. The allegations raised in the complaint are not unduly complex and plaintiff has fully demonstrated his ability to present the legal and factual claims in support of his claims.  The appointment of counsel is not warranted at this time. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4ᵗʰ Cir. 1984).

[4]        Fed. R. Civ. P. 56(c) provides that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Health and Retirement Insurance

According to defendants' records, plaintiff was housed at MCI-J until June 24, 2003. Paper No. 10, Exs. 1 & 2. They maintain that there are no records that indicate that funds were directed from plaintiff's prison account for purposes of paying chaplain's salaries or for officers' health or retirement insurance. *Id.*, Ex. 1.

Defendants acknowledge, however, that profits from telephone charges[5] and the prison commissary go into the Inmate Welfare Fund ("Fund"). *Id.*, Ex. 4. They state that there is a Fund established in each Maryland state correctional facility to be used only for goods and services that benefit the general inmate population. *See* Md. Code. Ann., Corr. Servs., § 10-502. Each Fund consists of profits derived from the sale of goods through the commissary operation and telephone and vending machine commissions, as well as money received from other sources. *Id*. § 10-503(a)(2). Defendants cite to Maryland caselaw which finds that the Fund "is used to pay for some inmate medical care, religious and educational services, family day services, recreational activities, and other costs associated with indigent inmates, such as clothing and postage." *Benson v. State*, 389 Md. 615, 887 A.2d 525, n. 4 (2005). Defendants state that policy regarding the use of the Fund is made at the legislative, not executive, level, and that the Fund supports the salaries of chaplains does not offend the U.S. Constitution. *Id*., Ex. 5.

Plaintiff complains that a percentage of monies placed into the Fund from telephone operations and inmate fund-raising events presumably are used to pay the salary of chaplains. The court finds nothing constitutionally untoward about this policy. As noted by defendants, inmates

---

[5]   Defendants assert that non-emergency telephone calls made by inmates are collect calls and the recipients, not the inmates, are charged. *See Benson v. State*, 389 Md. at 621, 887 A.2d at 528. In his opposition, plaintiff claims that non-emergency telephone calls made by inmates may also be made by prepaid calling plans. Paper No. 14 at 6.

cannot have access to religious services unless they are provided by the State.  Indeed, there is a presumed constitutional and statutory mandate to provide such services.  It would appear to this court that the particular use of inmate welfare funds complained of here operates not to interfere with religious exercise but to provide inmates, confined in state prisons, access to same.  Such practices have been deemed acceptable in the context of state schools, public hospitals, and the military.  *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 841-46 (1995); *Child Evangelism Fellowship of Md., Inc. v. Montgomery County Public Schools*, 373 F. 3d 589  (4th Cir. 2004); *Carter v. Broadlawns Medical Center*, 857 F.2d 448 (8th Cir. 1988); *Katcoff v. Marsh*, 755 F.2d 223 (2d Cir. 1985).  It can be argued that any indirect "religious establishments" that result from the practice are minor and are deemed consistent with the overall purpose of promoting religious liberty.  *See Johnson-Bey v. Lane*, 863 F. 2d 1308, 1312 (7th Cir. 1988).[6]

## Religious Worship

Plaintiff's original complaint raises a rather naked assertion that Warden Green has prevented him from practicing his religion.  In his opposition response he claims that he is asserting his religious claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc - 1 (a).[7]  Section 3 of the RLUIPA provides as follows:

---

[6]    Defendants do not refute plaintiff's claim that the Inmate Welfare Fund may be used, in part, to support correctional officers' health or retirement insurance.  They argue, however, that plaintiff has failed to allege a constitutional basis for presenting the claim in federal court.   The undersigned agrees.

[7]    Before RLUIPA, courts applied the First Amendment "deference" analysis found under *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safley*, 482 U.S. 78 (1987).   These cases held that incarceration leads to a limitation on many rights and privileges as may be warranted by valid penological considerations, *see O'Lone*, 482 U.S. at 348, and that a prisoner's right to free exercise of his religion must give way to regulations that are "reasonably related to legitimate penological interests." *Id*. at 349; *cf. Turner*, 482 U.S. at 89.

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1) is in furtherance of a compelling governmental interest; and is the least restrictive means of furthering that compelling governmental interest.

In his opposition response plaintiff claims, for the first time, that his religious preference was suspended in October of 2002, when the Lost-and-Found Nation of Islam ("LFNOI") service was "closed" by ECI Warden Green.[8]  Paper No. 14.  Plaintiff acknowledges, however, that he was not housed at ECI at that time.[9]  He seemingly claims, however, that his "religious belief and services continue to be suspended" and  maintains that neither Warden Green nor the ECI Islamic Chaplain will respond to his complaints of not being allowed to practice his religion.  Attachments to plaintiff's opposition include declarations from ECI inmates who claim  that LFNOI members are prohibited from congregate services and education class and/or to worship at ECI "as other religious groups."  *Id.*, Exs. 4-9.

Although this embellished claim was raised at the eleventh hour and appears to encompass an additional ground under the Fourteenth Amendment, the court finds it inappropriate to rule on defendants' summary judgment motion as to this allegation at this time.  It shall require defendants

---

[8]     According to plaintiff's attachment, in October of 2002, former ECI Warden Robert Kupec issued a memo which concluded that the LFNOI at ECI had "deviated from its approved organization and purpose by blending with the Nation of God and Earth also known as Five Percenters.  The Nation of God and Earth has been denied accommodation as a religion in Maryland because the group's spokesperson and literature states that it is not a religion."  Paper No. 14 at Ex. 2.  Warden Kupec suspended the activities of the Nation of God and Earth/Lost Found Nation of Islam based upon the recommendation from Division of Correction Headquarters.  *Id*.

[9]     Defendants' attachments show that plaintiff was housed at MCI-J from February 17, 2000, to June 24, 2003.  Paper No. 10 at Ex. 1.  He was not transferred to ECI until April of 2004.  *Id*.

to file a supplemental dispositive filing as to plaintiff's amended claims under RLUIPA and the First

and Fourteenth Amendments.

## Medical Care

Plaintiff's original complaint presents a naked assertion that Warden Green failed to take

corrective action when unnamed ECI officials interfered with his medical treatment.[10]   In his

opposition plaintiff particularized this allegation to state that he informed defendant Green that Post

Traumatic Stress Disorder ("PTSD") was covered and protected under the Americans with

Disabilities Act and that she was placed on notice that ECI personnel were providing her false

information regarding mental health personnel recommendations of an MCI-J psychologist and ECI

psychiatrist that he be placed in a single cell for his PTSD.   Paper No. 14 at 9-10 & Exs. 30 & 31.

He claims that  his mental condition has deteriorated.[11]   Because defendant Green has not had the

opportunity to respond to this amended claim she shall be required to file supplemental materials

regarding this allegation.

---

[10]   In response to this vague allegation, defendants note that plaintiff has complained to authorities about his treatment for Post Traumatic Stress Disorder ("PTSD") and that the complaint was reviewed and responded to by the Assistant Secretary for Treatment Services of the Department of Public Safety and Correctional Services and ECI Assistant Warden Washington-Worthy. Paper No. 10, Exs. 6 & 7. Defendants state plaintiff's PTSD has been followed by Dr. T. Reeves, a psychiatrist, and the psychotropic medication Trilafon has been prescribed.  *Id*. Dr. Reeves has done reassessments of plaintiff's treatment needs in May, June, September, and December of 2004, and March of 2005.  *Id*., Ex. 7.

[11]   In his opposition Plaintiff also claims that inmates are not receiving medications or are only receiving their medications for a portion of the prescription cycle.  Paper No. 14 at 8  & Ex. 24.  These claims are not, however, raised in terms of an Eighth Amendment violation and at no point does plaintiff state that he experienced a personal injury as a result of the alleged practices.

### III. Conclusion

For the aforementioned reasons, defendants' motion for summary judgment shall be granted in part and denied in part.   Defendants shall file a supplemental dispositive motion as delineated by this court.


Dated: January 31, 2007                  /s/
                                         J. Frederick Motz
                                         United States District Judge